[No. 35557. Department Two. February 23, 1961.]

HOUSEHOLD FINANCE CORPORATION OF SEATTLE, *Appellant*, v. EDGAR T. DESHAZO *et al., Respondents.*[1]

[1]Reported in 359 P. (2d) 1044.

Alexander Wiley, for appellant.

William B. Christie, for respondent.

OTT, J.—Prior to September 18, 1958, Edgar T. DeShazo had borrowed from the Household Finance Corporation of Seattle (hereinafter referred to as the finance company) various sums of money and, on that date, was indebted to it in the sum of $349.02. He had been unemployed for four months and· was· in need of $150 in additional financing to apply toward the payment of his current living expenses. His written application to the finance company for the additional amount contained the following sentence: "The total of *all our other debts* of all kinds, including any balance to you, is no more than $2,149.92."

A supplementary instrument to the finance company contained an itemized statement of the above indebtedness. The itemized statement did not include current living expenses and omitted several other items of indebtedness totaling approximately $600. The request for the additional loan was approved by the manager of the finance company in an amount of $500, conditioned as follows:

"Proceeds of Loan Disbursed as follows:
To Lender for unpaid principal balance prior loan
  No. T 1552................................. $349.02
Cash or check to Borrower..................... $150.98

                           Total  $500.00"

The various instruments supporting the application for the additional loan showed that DeShazo had been unemployed, and that· he was currently building two 18-foot boats which, when completed, would cost approximately $1,000 each, and which he hoped to be able to sell for $1,900 each. The application showed that his outstanding liabilities far exceeded his assets.

May 15, 1959, Edgar T. DeShazo and Jordana DeShazo,

his wife, were discharged as bankrupts in the United States District Court for the Western District of Washington. The indebtedness to the finance company was listed in the bankrupts' schedule of indebtedness.

June 18, 1959, the finance company commenced this action against Edgar T. and Jordana DeShazo. The complaint alleged that the balance of the $500 note in the sum of $489.51 was due and unpaid, plus three per cent monthly interest on $300 and one per cent per month on $189.51 from November 17, 1958, until paid. The defendants' answer denied the indebtedness and affirmatively pleaded the discharge of the obligation by the bankruptcy proceedings. The reply denied that the account had been discharged.

The cause was tried to the court. The facts were substantially as above indicated. The contention of the finance company at the trial was that it had been defrauded by defendants' written statement that they were then indebted only in the sum of $2,149.92, when, in fact, they were indebted in the sum of approximately $2,800; that, because of the false financial statement, it surrendered property in the form of a promissory note in the sum of $349.02 and $150.98 in cash, and that, since the money and property were obtained by false representations, the balance of the liability on the note was not discharged by the bankruptcy proceedings. 11 U. S. C. 1683, 1685, §§ 32 (c) (3), 35 (a) (2).

The trial court found that the written representation was fraudulent, and that the finance company, by virtue thereof, had advanced $150.98 additional money, and awarded judgment against the defendants accordingly. The finance company has appealed.

Appellant's sole contention is that the judgment in its favor should have been in the sum of $489.51, plus interest, instead of $150.98, plus interest. We do not agree. The respondents sought a new loan in the sum of $150 to pay current expenses which had accumulated as a result of four months of unemployment. The appellant's manager testified in this regard as follows:

"Q. In other words, he was behind and needed it— A. He needed it for current expenses. Q. He couldn't pay his current expenses? A. That's right."

There is no contention that the original loan had been obtained by virtue of any fraudulent representations; that it was due, or that payment had been demanded. The finance company required that the new and old indebtedness be consolidated and evidenced by a single note in the sum of $500. The note representing the original indebtedness was delivered to respondents upon appellant's acceptance of the renewal note.

The sections of the Bankruptcy Act with which we are here concerned are as follows:

11 U. S. C. 1683, § 32(c): "The court shall grant the discharge unless satisfied that the bankrupt has . . . (3) obtained money or property on credit, or obtained an extension or renewal of credit, by making or publishing or causing to be made or published in any manner whatsoever, a materially false statement in writing respecting his financial condition; . . ."

11 U. S. C. 1685, § 35(a): "A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as . . . (2) are liabilities for obtaining money or property by false pretenses or false representations, . . ."

■ The appellant did not elect to invoke the provisions of § 32(c)(3) in the bankruptcy court. Under the act, the creditor's claim is not affected by the bankruptcy proceedings, if it is established that the bankrupt has obtained money or property by materially false statements in writing respecting his financial condition.

Under § 35(a)(2), all provable debts, whether allowable in full or *in part, are discharged except* such as are *liabilities* for obtaining money or property by false representations. In the instant case, the sole money loss which the appellant sustained by virtue of the respondents' representation was that *part* of the allowable debt, in the sum of $150.98, which the court found had its inception in fraud.

■ Aside from the additional cash advanced, did the

appellant part with any *property* within the contemplation of § 35 (a) (2)? Although the appellant parted with a note which represented the original debt, it received in return (irrespective of any false statements) a note of equal value. The exchange left the parties, with respect to this part of the indebtedness, in a status.quo. By the surrender of the original note and the acceptance of the renewal, the appellant did not part with, nor did the respondents receive, any "property" within the contemplation of the exception of the statute. See *Personal Finance Co. v. Moore,* 153 Me. 122, 135 A. (2d) 414 (1957); *Personal Finance Co. v. Murphy,* (La. App.) 53 So. (2d) 421 (1951).

We are cognizant that some jurisdictions have adopted a contrary rule. However, we believe it is better reasoning and more in keeping with the spirit and intent of the Federal Bankruptcy Act that, where, as here, there are two clearly severable loan transactions, one conceived in fraud and the other not so conceived, the only liability which should survive the discharge in bankruptcy is the one which was conceived in fraud.

For the reasons stated, the judgment is affirmed.

FINLEY, C. J., HILL, DONWORTH, and HUNTER, JJ., concur.

May 16, 1961. Petition for rehearing denied.