443 P.2d 929

**HOUSEHOLD FINANCE CORPORATION,**
a corporation, Appellant,

v.

**William R. WALTERS and Perfecta C. Walters, his wife, Appellees.**

**No. 2 CA–CIV 520.**

Court of Appeals of Arizona.

July 31, 1968.

Nolen L. McLean and M. L. McNeill, by Nolen L. McLean, Tucson, for appellant.

Russo, Cox & Dickerson, by Jerold A. Cartin, Tucson, for appellees.

MOLLOY, Judge.

This appeal raises the question of whether, following a borrower's discharge in bankruptcy, a small loan company can recover the entire amount of a "renewal loan" made by it in reliance upon a false financial statement of the borrower, or whether recovery is limited to the amount of "new money" or "fresh cash" advanced by the loan company at the time the false statement is made.

Clarity will be served by immediate reference to the applicable law.

Prior to 1960, Section 17 of the Bankruptcy Act, 11 U.S.C.A. § 35, entitled "Debts not affected by a discharge," provided, in pertinent part:

"(a)  A discharge in bankruptcy shall release a bankrupt from all of his provable debts, * * * except such as * * * (2) are liabilities for obtaining money or property by false pretenses or false representations * * *"

Under these terms of the statute, some courts, perhaps a majority, held that, where a lender renewed or extended existing indebtedness of a borrower and at the same time advanced new money in reliance upon a false financial statement, the lender was entitled to recover the entire amount of the indebtedness, notwithstanding the borrower's subsequent discharge in bankruptcy. See, e. g., Personal Finance Co. of New Jersey v. Bruns, 16 N.J.Super. 133, 84 A.2d 32 (1951), stated to represent the majority view in Local Industrial Finance Company v. McDougale, 404 S.W.2d 789, 792 (Ky. 1966). A respectable body of conflicting authority, however, took the view that an extension or renewal of existing indebtedness did not constitute "obtaining" either "money" or "property" under the terms of the statute, and confined the lender's recovery to the amount of fresh cash advanced at the time of the giving of the false statement. See, e. g., Household Finance Corp. of Seattle v. De Shazo, 57 Wash.2d 771, 359 P.2d 1044, decided in 1961 under

the statute as written above; and Household Finance Corp. v. Christian, 8 Wis.2d 53, 98 N.W.2d 390 (1959).

In 1960, by legislation popularly known as the "Cellar Amendment," Congress amended Section 17 and it also amended Section 14 of the Bankruptcy Act, 11 U.S. C.A. § 32, relating to the granting of discharges. Section 14 was amended in such a manner that a lender or creditor of an individual "nonbusiness" bankrupt no longer had the power it previously had to block the granting of a discharge by proof that the bankrupt had obtained "money or property on credit" or "an extension or renewal of credit" by means of a false representation of his financial condition. At the same time, Section 17(a) (2) was amended to read as follows:

"(a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, * * * except such as * * * (2) are liabilities for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit *or obtaining an extension or renewal of credit* in reliance upon a materially false statement in writing respecting his financial condition made * * * with intent to deceive * * *" (Emphasis added)

■ Both the plain terms of the changes effected by the Cellar Amendment and its legislative history [1] indicate a give-and-take whereby the lenders gave up their power to oppose a discharge under Section 14 of the Act and took in return express Congressional adoption of the hitherto supposed "majority rule" that an extension or renewal of existing indebtedness in reliance upon a materially false written financial statement is not dischargeable and that the entire indebtedness may be recovered by the lender after the borrower's discharge in bankruptcy.[2]

■ Cases involving renewal or extension loans decided under Section 17(a) (2) as altered by the Cellar Amendment have uniformly given effect to its new provisions and have held that the lender may recover the renewed prior indebtedness as well as the new money advanced at the time of the making of the false financial statement.[3] A number of these decisions have come from jurisdictions which previously took the view that the lender could recover only the new money advanced.[4] The Bankruptcy Act is the paramount law of the land under our Federal Constitution, Article I, Section 8, and see 1 Collier, Bankruptcy, Section 0.02, at 4, and it is now too late for a contention in Arizona, or elsewhere, that a lender may not recover after bankruptcy indebtedness extended or renewed by the lender on the basis of a false financial statement.

1. See Senate Report No. 1688, 86th Congress (2d Sess.), June 24, 1960, reported in 2 U.S.Code, Congressional and Administrative News (1960), at 2954 et seq.; testimony before a Subcommittee of the Senate Committee on the Judiciary, set out in Federal Finance Co. v. Merkel, 65 Wash.2d 379, 397 P.2d 436, 438–439 (1964); 1 Collier, Bankruptcy (14th Ed. 1967) § 17.16, at 1631–1632, esp. n. 9; Comment, Effect of False Financial Statements on Debts Discharged in Bankruptcy—Section 17(a) (2) of the Bankruptcy Act, 21 La.L.Rev. 638 (1961).

2. The requirements of reliance and intent to deceive set forth in the amended Act added nothing of substance to the existing law, being a codification of the rule established in cases previously decided under § 17(a) (2). See Senate Report No. 1688, cited in n. 1, supra.

3. See M-A-C Loan Plan, Inc. v. Cooper, 23 Conn.Sup. 184, 1 Conn.Cir. 169, 179 A.2d 313 (1961); Local Industrial Finance Company v. McDougale, 404 S.W.2d 789 (Ky.1966); Liberal Finance Corp. v. Holley, 157 So.2d 376, on rehearing, 379–380 (La.App.1963); Seaboard Finance Company v. Barnes, 378 Mich. 627, 148 N.W.2d 756 (1967); Advance Loan Company v. Bell, 75 N.M. 204, 402 P.2d 944 (1965); Federal Finance Co. v. Merkel, 65 Wash.2d 379, 397 P.2d 436 (1964); First Credit Corporation v. Wellnitz, 21 Wis.2d 18, 123 N.W.2d 519 (1963).

4. See Louisiana, Washington and Wisconsin decisions cited in n. 3.

We now come directly to the case at bar. On June 9, 1965, the appellee William Walters and his wife were indebted to the appellant, Household Finance Corporation, in the amount of $501.04, the balance then owing on a prior loan. On that date, Walters and his wife applied for another loan from appellant in the amount of $709.86. The application was granted and appellant advanced to Walters and his wife cash in the amount of $208.82, the remainder of the new loan sought being applied to repay the balance due on the previous loan.

William Walters was adjudicated a bankrupt in October, 1965. The balance then due on the June, 1965, loan from appellant was included within the schedule of indebtedness filed with his petition in the bankruptcy court. Walters was in due course granted a discharge.

Thereafter, appellant brought suit against Walters and his wife on their joint note evidencing the indebtedness arising from the loan transaction of June 9, 1965. Judgment was rendered in favor of appellant against Mrs. Walters for the full amount[5] of the note, $709.86, and that judgment is not in question here. The trial judge rendered judgment for appellant and against William Walters in the amount of $208.82, the amount of new money advanced by appellant pursuant to the June application. The loan company appeals, asserting its right to judgment against William Walters in the amount of $709.86.

After trial of the cause to the court, the trial judge entered an order, which recites, in part:

> "The Court has entered judgment against the defendant, Perfecta C. Walters in the full amount since there was no Discharge in Bankruptcy for her, and

entered judgment for $208.82 against defendant, William R. Walters inasmuch as a Discharge in Bankruptcy will not discharge a debt incurred by false representation. This defendant was already obligated to the plaintiff for $501.04 and since there was no proof adduced that the plaintiff either extended the loan or renewed it on any representation made by defendant, William R. Walters, the amount of $501.04 was deducted from the $709.86, leaving a balance not dischargeable in bankruptcy of $208.82."

█ We have examined the evidence adduced at the trial, where the materiality of the falsity in Walters' last financial statement and the extent of the lender's reliance thereon were in issue. There was evidence sufficient to support the trial court's finding that Walters had falsely represented his financial condition in a material manner. The evidence was likewise such that an inference of intent to deceive the lender could be inferred.[6] We accordingly agree with the basic conclusion of the trial court that appellant was entitled to a recovery of some kind on the basis of a falsely represented financial condition. Appellee does not contend to the contrary.

█ We must disagree, however, with the trial court's factual-legal conclusion that there was no proof adduced that appellant extended or renewed its previous loan on the strength of false representation by Walters. There is no question but that the existing indebtedness on the previous loan was at least renewed on June 9, 1965, whether or not it was also extended at that time. "Renewal" and "extension" of credit are referred to in the disjunctive in the federal statute, and accordingly either alone would be a sufficient detriment to support the lender's action.

---

5. At trial, appellant waived interest accrued on the principal amount of $709.86 and attorneys' fees.

6. That such intent may be inferred from the circumstances of the application and loan, see Beneficial Finance Co. v. Collins, 150 W.Va. 655, 149 S.E.2d 221 (1966).

The renewal of the old indebtedness on June 9, 1965, and the advance of new money in the amount of $208.82 were accomplished by a single, integrated transaction, which was the subject of a single loan application for the entire amount $709.86. The indebtedness was evidenced by a single note for the entire amount. We find no basis in the record for an inference or a holding to the effect that Walters made only $208.82 worth of misrepresentation, or that appellant relied upon Walters' statement of financial condition to that extent and no more. Appellee has not pointed out to us any tendency of the evidence to support a conclusion that the elements of Section 17(a) (2) were satisfied only as to the new money advanced. Instead, appellee argues that the Arizona law of fraud permits recovery only for "consequent and proximate injury," and that such rule restricts recovery to the amount of the new money advanced. Appellant, however, brought suit in contract on its note, for an undischarged debt, rather than an action in tort for fraud. This it had a right to do. See Seaboard Finance Company v. Barnes, 378 Mich. 627, 148 N.W.2d 756 (1967), and National Finance Company of Utah v. Valdez, 11 Utah 2d 339, 359 P.2d 9 (1961). Nor could Arizona law be applied in any manner which would be inconsistent with or limit the plain meaning and intent of the national Bankruptcy Act. See In re Chicago Rapid Transit Co., 129 F.2d 1 (7th Cir. 1942), and cases cited therein.

We do not think that this integrated transaction can be severed or disintegrated as a matter of fact or as a matter of law. Accordingly, the judgment entered in this action in favor of the plaintiff is modified to increase it to $709.86, and, as modified, the judgment is affirmed. Appellant is to recover costs.

HATHAWAY, C. J., and KRUCKER, J., concur.